DECISION ON OBJECTION TO MAGISTRATE'S DECISION.
{¶ 1} Relator, William D. Sexton, has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying him compensation for the alleged loss of use of his "upper left extremity" pursuant to R.C. 4123.57(B), and to enter a new order granting said compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that the commission relied upon "some evidence" in the report of Dr. Scheatzle in denying relator's application and that this court should deny the requested writ.
 {¶ 3} Relator filed an objection to the decision of the magistrate rearguing the central issue of the case. For the reasons adequately stated in the decision of the magistrate, the objection is overruled.
 {¶ 4} Following independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with that decision, the requested writ is denied.
Objection overruled; writ of mandamus denied.
Petree and Brown, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. William D. Sexton, : Relator, : v. : No. 03AP-1249 The Industrial Commission of Ohio : (REGULAR CALENDAR) and Dakota Enterprises, Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on July 28, 2004 Brian Law Offices, and Richard F. Brian, for relator.
Jim Petro, Attorney General, and Gerald H. Waterman, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 5} In this original action, relator, William D. Sexton, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him R.C. 4123.57(B) compensation for the alleged loss of use of his "left upper extremity" and to enter an order granting said compensation.
Findings of Fact:
 {¶ 6} 1. On October 4, 1999, relator sustained a severe industrial injury when a carnival ticket booth fell on him. The industrial claim is assigned claim number 99-612279.
 {¶ 7} 2. Prasanna L. Soni, M.D., has been relator's treating physician. On August 3, 2001, Dr. Soni wrote:
As a result of the injuries and the subsequent treatment, his left upper extremity, for all practical purposes, is now completely useless. It is flail. He has no motion in his shoulder. He has minimal motion in his elbow. His extension is complete. Flexion is barely 30°. Supination and pronation is limited and painful. His wrist and hand motion is also limited and painful.
 {¶ 8} 3. On August 12, 2002, relator was examined by Jess G. Bond, M.D. Dr. Bond reported:
Examination of the left shoulder revealed muscular atrophy of the entire shoulder girdle. There was a 20 cm long wellhealed surgical scar noted over the anterior aspect of the right upper arm and shoulder. There was a well-healed 5 cm laceration scar noted over the posterior aspect of the left proximal upper arm. There was diffuse tenderness with deep palpation over the entire aspect of the left shoulder and upper arm. Active range of motion at the left shoulder joint was essentially non-existent in any direction. His left upper extremity was essentially held fixed against the left side of his body with the forearm held in at 90 degrees of flexure contraction, with limited to essentially no movement at the left wrist and hand. He was also observed to use his right hand to support his left hand when the sling was removed to limit pain and involuntary spasms in his left hand.
* * *
Discussion
William D. Sexton has no use of his left upper extremity. He demonstrated limited ability to ambulate with the use of a cane and he has reduced use of his left lower extremity. He has described problems with dressing himself, and he has difficulty with his other activities of daily living and needs regular assistance with many tasks.
(Emphasis sic.)
 {¶ 9} 4. On January 29, 2003, relator moved for "225 weeks" of R.C. 4123.57(B) scheduled loss compensation "for total loss of use of the left upper extremity." In support, relator cited the August 12, 2002 report of Dr. Bond.
 {¶ 10} 5. On March 28, 2003, relator was examined by Paul T. Scheatzle, D.O., at the request of the Ohio Bureau of Workers' Compensation ("bureau"). Dr. Scheatzle reported:
In my medical opinion, the allowed injury has not resulted in a total permanent loss of the use of his left arm. Patient has near normal left hand function. His hand function however is limited markedly by his total loss of use of his left shoulder as well as the contracture that has developed in his left elbow. This makes placing his hand in a functional position difficult and limits it's use. Using the combined range of motion measurement deficits at the wrist, elbow and shoulder results in a 71% impairment of the left upper extremity. A further 5% impairment exists due to sensory and motor losses due to nerve damage of the left shoulder in the axillary nerve distribution. He further has ongoing pain complaints which may limit his function and has the need to wear soft hemi-sling for comfort.
 {¶ 11} 6. Following a June 25, 2003 hearing, a district hearing officer ("DHO") issued an order denying relator's motion. The DHO relied upon Dr. Scheatzle's report.
 {¶ 12} 7. Relator administratively appealed the DHO's order. Following an August 27, 2003 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order. The SHO's order states:
The Staff Hearing Officer concurs with the District Hearing Officer and finds claimant has not established he sustained a total loss of use of the left upper extremity.
Accordingly, claimant's request for a scheduled loss pursuant to Ohio Revised Code Section 4123.57(B) for total loss of use of the left upper extremity is denied.
The Staff Hearing Officer relies upon Dr. Scheatzle's 3/28/2003 report wherein Dr. Scheatzle opines the claimant retains near normal left hand function.
All evidence was read and evaluated, however, Dr. Scheatzle's opinion is found persuasive.
(Emphasis sic.)
 {¶ 13} 8. On September 27, 2003, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of June 25, 2003.
 {¶ 14} 9. On December 27, 2003, relator, William D. Sexton, filed this mandamus action.
Conclusions of Law:
 {¶ 15} The issue is whether Dr. Scheatzle's report is some evidence supporting the commission's denial of R.C. 4123.57(B) compensation.
 {¶ 16} The magistrate finds that Dr. Scheatzle's report is some evidence supporting the commission's denial of R.C.4123.57(B) compensation. Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 17} R.C. 4123.57(B) establishes a compensation schedule for claimant's who sustain the "loss" of an enumerated body part. "Loss" is not confined to amputation. A "total and permanent loss of use" also constitutes a compensable "loss." State ex relWalker v. Indus. Comm. (1979), 58 Ohio St.2d 402.
 {¶ 18} The loss of use of a body part is compensable when it is "`to the same effect and extent as if [it] had been amputated or otherwise physically removed.'" State ex rel. Franks v.Indus. Comm., 99 Ohio St.3d 35, 2003-Ohio-2456, at ¶ 27, citingState ex rel. Gassmann v. Indus. Comm. (1975),41 Ohio St.2d 64, 67.
 {¶ 19} R.C. 4123.57(B) provides for the payment of 225 weeks of compensation "[f]or the loss of an arm." There is no dispute here that, in the context of R.C. 4123.57(B) an "arm" includes the hand of that arm. See State ex rel. Cook v. Zimpher (1985),17 Ohio St.3d 236. (Scheduled loss awards are cumulative.) There is also no dispute here that relator's motion for R.C. 4123.57(B) compensation for the alleged loss of use of his "left upper extremity" is, in effect, a request for compensation for the alleged loss of use of his left arm.
 {¶ 20} According to relator, Dr. Scheatzle's report is not some evidence upon which the commission can rely because Dr. Scheatzle "disregards the treating physician[']s restrictions." (Relator's brief at 3.) Relator's argument seems to suggest that Dr. Scheatzle was required to accept Dr. Soni's findings. There is no authority to support such proposition. Clearly, Dr. Scheatzle, as an examining physician, was under a duty to render his own findings regardless of Dr. Soni's reports.
 {¶ 21} It has been held that the reports of a treating physician are not entitled to enhanced weight before the commission. State ex rel. Bell v. Indus. Comm. (1995),72 Ohio St.3d 575, 577. Relator's argument is inconsistent with this principal.
 {¶ 22} Relator also contends that Dr. Scheatzle is contradictory when he states that relator's "hand function however is limited markedly by his total loss of use of his left shoulder as well as the contracture that has developed in his left elbow." There is no contradiction. There is no need to explain the lack of contradiction.
 {¶ 23} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 /s/Kenneth W. Macke
KENNETH W. MACKE MAGISTRATE