DECISION
{¶ 1} Relator, Coastal Pet Products, Inc., has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting the request of respondent, Erica L. Wright, for compensation for the alleged loss of use of her left hand, pursuant to the scheduled-loss provisions of R.C. 4123.57(B), and to enter a new order denying the scheduled-loss award.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court issue a writ of mandamus ordering the commission to vacate its scheduled-loss award. (Attached as Appendix A.) No objections have been filed to that decision.
 {¶ 3} Finding no error of law or other defect on the face of the magistrate's decision, and based upon an independent review of the record, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ is granted.
Writ of mandamus granted.
Lazarus and Klatt, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. :
Coastal Pet Products, Inc., :
Relator, :
 :
v. : No. 04AP-430
 :
Erica L. Wright and : (REGULAR CALENDAR)
Industrial Commission of Ohio, :
Respondents. :
 MAGISTRATE'S DECISION Rendered on November 16, 2004 Darrell N. Markijohn, Esq., LLC, and Darrell N. Markijohn, for relator.
Weltman, Regas Haag, Ltd., and John S. Regas, for respondent Erica L. Wright.
Jim Petro, Attorney General, and Joseph C. Mastrangelo, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 4} Relator, Coastal Pet Products, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted the request of respondent Erica L. Wright ("claimant") for the payment of benefits, pursuant to R.C. 4123.57(B), for loss of use of her left hand. Relator requests that the commission be ordered to find that the evidence in the record does not support the loss of use award and in denying that compensation to claimant.
Findings of Fact:
 {¶ 5} 1. Relator sustained a work-related injury on August 1, 2002, and her claim was originally allowed for: "contusion of left hand; contusion of left wrist; reflex sympathetic dystrophy left hand." Claimant's injury occurred when she tripped over boxes, fell onto a conveyor belt and struck her left hand against a bolt.
 {¶ 6} 2. Claimant requested temporary total disability ("TTD") compensation which was granted. Claimant never returned to full time work without restrictions.
 {¶ 7} 3. The record contains numerous medical and therapy notes regarding claimant's treatment. Claimant's progress has been extremely limited. Some days she demonstrated mild increases in passive and active range of motion; however, overall claimant's hand condition did not improve. Instead, it continued to get worse. Claimant received 24 stellate ganglion block injections to her hand and ultimately had a tunneled epidural catheter placed to manage her pain. The medical reports confirmed that claimant has some atrophy of the muscles in her hand.
 {¶ 8} 4. On February 3, 2003, claimant filed a motion asking that she be awarded 100 percent loss of use of her left hand pursuant to R.C.4123.57(B).
 {¶ 9} 5. Claimant was seen by Ira E. Richterman, M.D., who issued a report dated May 1, 2003. Dr. Richterman noted that claimant has received an abundance of conservative care as well as stellate ganglion blocks and bier blocks. Dr. Richterman noted that claimant holds her fingers in a resting position and is not able to actively move her fingers in either flexion or extension, secondary to severe pain and stiffness. Dr. Richterman then opined as follows:
* * * It is in my medical opinion that at this time Ms. Wright hassuffered a loss of use of her left hand, secondary to Reflex SympatheticDystrophy. She has the inability to move her fingers actively in her lefthand, secondary to discomfort and stiffness, although she does not havetrue contractures at this time. It is in my medical opinion that thisReflex Sympathetic Dystrophy is causally related to her accident of8/1/02.
* * * Erica's injury is isolated to her left hand. At this time, shehas 100% impairment of her hand, which is equivalent to a 90% impairmentrating of her left upper extremity. A 90% left upper extremity impairmentrating is equivalent to a 54% whole person rating.
(Emphasis sic.)
 {¶ 10} 6. Claimant's application for total loss of use of her left hand was approved by order of the Ohio Bureau of Workers' Compensation ("BWC") mailed June 23, 2003. The BWC relied upon the May 1, 2003 exam of Dr. Richterman.
 {¶ 11} 7. Claimant's treating physician, Michael Stanton-Hicks, M.D., issued a letter dated November 5, 2003, wherein he gave some explanation of claimant's prior treatment, and indicated that, in May 2003 he spoke with her about participating in a trial of Thalidomide. Apparently, claimant rejected this alternative because she was pregnant. Furthermore, as of September 12, 2003, claimant attempted to reduce her requirement for opiate medication. At the time, claimant was taking large amounts of narcotic medications in an effort to manage her pain. In closing, Dr. Stanton-Hicks opined as follows: "It cannot be predicted at this point whether loss of use is permanent, however, it is more likely than not to be the case without treatment."
 {¶ 12} 8. Claimant was examined by Richard J. Reichert, M.D., who issued a report dated July 31, 2003. Dr. Reichert noted the following on examination:
Active range of motion measurements of the left wrist revealed flexion of 20 degrees, extension of 10 degrees, radial deviation of 10 degrees, and ulnar deviation of 10 degrees. Examination of the left hand revealed evidence of muscle atrophy of the thenar and hypothernar eminences.
Examination of the left elbow revealed flexion of 90 degrees, extension loss of 60 degrees, supination of 0 degrees, and pronation of 30 degrees. The patient's range of motion of the left shoulder was markedly limited as well, with abduction of 70 degrees, adduction of 0 degrees, flexion of 50 degrees, and extension of 10 degrees. I was unable to test internal and external rotation on this individual.
 {¶ 13} In part, based upon indications that claimant has been seen by co-workers using her left hand outside of work, Dr. Reichert noted as follows:
* * * Your correspondence has identified that this patient has been observed using the hand by co-workers outside of the work environment. This patient subjectively refuses to move the hand and does show some changes of disuse within the hand. The patient has significant limitations in range of motion of the shoulder, elbow, wrist, and fingers. The patient, however, does not, in my opinion, meet the definition of permanent total loss of use of the hand as outlined in your correspondence. It would be my opinion that the patient is able to do slight motor activities of the hand in assisting the contralateral upper extremity in performing functions. Therefore, it is my opinion, within a reasonable degree of medical certainty, that this patient does not have permanent total loss of use of the left hand.
 {¶ 14} 9. Because the employer appealed, the matter was heard before a district hearing officer ("DHO") on September 24, 2003, and resulted in an order denying claimant's scheduled loss award for total loss of the use of her hand for the following reasons:
The District Hearing Officer further finds that the Claimant has not established that she has lost all function of the left hand, as if it was amputated.
This order is based on the 07/10/2003 Alliance Community Hospital report and 08/28/2003 Alliance Community Hospital report which reflect range of motion in the fingers, albeit very limited, and the 07/31/2003 report of Dr. Reichert who notes that a serious condition exists, but concludes that there is NOT total loss of use of the left hand.
(Emphasis sic.)
 {¶ 15} In the July 10, 2003 hospital record noted by the DHO, on physical examination, the following was noted: "The patient is reluctant to move her fingers secondary to pain." In the August 28, 2003 hospital report, the following was noted on physical examination: "She has very limited range of motion to the fingers due to pain."
 {¶ 16} 10. Upon further appeal by claimant, the matter was heard before a staff hearing officer ("SHO") on November 19, 2003, and resulted in an order vacating the prior DHO order. Specifically, the SHO noted the following:
The Hearing Officer finds from proof on file that as a result of the injury in this claim, claimant's left hand is ankylosed and useless.
It is ordered, therefore, that compensation for permanent partial disability be granted for the loss of the left hand, in accordance with Section 4123.57 of the Ohio Revised Code. Said compensation to commence 05/01/2003.
The Hearing Officer, in making this finding, has relied upon the following evidence: Dr. Stanton-Hicks, claimant's physician's finding indicating in his 11/05/2003 report that the claimant suffers a total loss of use of the left hand. Dr. Richterman, State examiner finding indicating in his 05/01/2003 report that the claimant has suffered a loss of use of her left hand.
 {¶ 17} 11. Further appeal was refused by order of the commission mailed December 18, 2003.
 {¶ 18} 12. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 19} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 20} R.C. 4123.57 provides for the payment of partial disability compensation as follows:
Partial disability compensation shall be paid as follows.
* * * [N]ot earlier than forty weeks after the date of termination of the latest period of payments under section 4123.56 of the Revised Code, or not earlier than forty weeks after the date of the injury * * * in the absence of payments under section 4123.56 of the Revised Code, the employee may file an application with the bureau of workers' compensation for the determination of the percentage of the employee's permanent partial disability resulting from an injury or occupational disease.
 {¶ 21} "Loss" was originally defined to mean loss by severance and did not include loss of use. In State ex rel. Gassmann v. Indus. Comm.
(1975), 41 Ohio St.2d 64, the Supreme Court of Ohio expanded the meaning of the term "loss" contained in R.C. 4123.58(C), which governs permanent total disability compensation, to include "loss of use" and not merely "loss by severance."
 {¶ 22} In State ex rel. Walker v. Indus. Comm.
(1979), 58 Ohio St.2d 402, the Supreme Court of Ohio extended the holding of Gassman to apply to R.C. 4123.57(C), now R.C. 4123.57(B). The loss of use must be functionally equivalent to an amputation. See Stateex rel. Franks v. Indus. Comm., 99 Ohio St.3d 35, 2003-Ohio-2456.
 {¶ 23} Relator's argument in the present case focuses on its contention that the medical evidence does not show the requisite "permanency" element of a permanent partial disability award. For the reasons that follow, this magistrate agrees.
 {¶ 24} The word "permanent" is not statutorily defined. This court has held that "permanently" is subject to differing interpretations. SeeState ex rel. Schafer v. Indus. Comm. (Mar. 28, 1989), Franklin App. No. 88AP-130.
 {¶ 25} Thereafter, in State ex rel. Bing v. Indus. Comm.
(1991), 61 Ohio St.3d 424, although not specifically distinguishing between permanent partial disability "permanency" and temporary total disability "permanency" inferred that the term "permanency" may have unique meaning as used in State ex rel. Ramirez v. Indus. Comm. (1982),69 Ohio St.2d 630. See, also, State ex rel. Kaska v. Indus. Comm.
(1992), 63 Ohio St.3d 743. Furthermore, in State ex rel. Welker v.Indus. Comm. (2001), 91 Ohio St.3d 98, 103, the court cited with approval from Fogarty v. State (1967), 103 R.I. 228, 236 A.2d 247, 248-249, as follows:
"A full opportunity for achieving whatever beneficial effects medical science may have on an injury must of necessity precede any determination of what has been the percentage of loss of usefulness. Until those effects can, without speculating or delving into mere possibilities, be reasonably foretold, it is impossible to ascertain what will be the percentage of the permanent loss of usefulness. * * * It is permanency which is essential because it is only for a permanent loss, not for any loss, that the statute provides benefits." (Emphasis sic.) Fogarty,103 R.I. at 230-231, 236 A.2d at 248.
 {¶ 26} In the present case, the medical evidence is clear that, at this point in time, claimant's hand is, for all intents and purposes, useless. However, the medical reports upon which the commission relied do not indicate that total loss is "permanent." For instance, in his November 5, 2003 report, Dr. Stanton-Hicks indicated that claimant did not participate in a trial of Thalidomide because she was pregnant. Furthermore, due to the pregnancy, it was necessary for her to reduce her requirement for narcotics. Lastly, Dr. Stanton-Hicks specifically noted as follows: "It cannot be predicted at this point whether loss of use is permanent, however, it is more likely than not to be the case without treatment."
 {¶ 27} The commission also relied upon the May 1, 2003 report of Dr. Richterman. In his report, Dr. Richterman noted that: "At this time, she has 100% impairment of her hand."
 {¶ 28} The commission cites State ex rel. Gen. Motors Corp., ParmaPlant v. Indus. Comm. (1993), 66 Ohio St.3d 26, in support of its argument. In that case, although Dr. Fierra's report did not use the term "loss of use," because his report listed numerous objective and subjective findings from which the commission could reasonably conclude that the claimant had effectively lost the use of his right thumb, the court noted that there was "some evidence" supporting the commission's decision that the claimant had suffered an impairment. However, that case is not on point with the facts of this case. The commission argues that the lack of the term "permanent" does not eliminate the conclusion that the condition is permanent. However, as noted previously, relator's treating physician, Dr. Stanton-Hicks, specifically indicated that he could not predict whether or not her loss was permanent at this time. As such, his opinion is completely inapposite of a finding of permanency.
 {¶ 29} Because the magistrate finds that the medical evidence does not support the requisite finding of "permanency" required for an award of permanent partial disability compensation, this magistrate finds that the commission abused its discretion in awarding claimant a one hundred percent loss of use of her left hand. As such, it is this magistrate's decision that this court grant a writ of mandamus ordering the Industrial Commission of Ohio to vacate its award to claimant.
 /s/ Stephanie Bisca Brooks
 STEPHANIE BISCA BROOKS
 MAGISTRATE